IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| MARCEL C NOTZON, III, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 5:17-CV-7 |
| | § | |
| CITY OF LAREDO, *et al*, | § | |
| | § | |
| Defendants. | § | |

### ORDER ON DEFENDANTS' MOTIONS TO DISMISS

Defendants City of Laredo, Roberto A. Garcia, Ricardo Gonzalez, and Gustavo Guerra filed a Motion to Dismiss [Doc. No. 57] the Second Consolidated Amended Complaint [Doc. No. 55] of Plaintiffs Marcel C. Notzon, III, Victor Ramos, and Marlene Gonzalez, as next friend of Luis Felipe Gonzalez. Defendant Laredo Regional Medical Center, L.P. D/B/A Doctors Hospital of Laredo ("Doctors Hospital" or "the Hospital") also filed a Motion to Dismiss [Doc. No. 56] the same Complaint. For the reasons stated below, the Court partially grants and partially denies each motion.

### I. Background[1]

The Plaintiffs allege that on January 16, 2015, Plaintiff Victor Ramos ("Ramos") was on his motorcycle approaching North Central Park in Laredo, Texas. As he entered the park, he was struck by another motorcycle who was in the incorrect lane. Ramos was injured by the collision, but the driver of the other motorcycle, Laredo Police Officer Defendant Gustavo Guerra, Jr. ("Guerra"), did not stop to render aid. Instead, Guerra fled the accident scene (in violation of

---

[1] The following facts are drawn from Plaintiffs' Second Consolidated Amended Complaint. At the motion to dismiss stage, the Court must accept the Plaintiffs' factual allegations as true. Their recitation here should not be misconstrued as findings of fact by this Court.

1

Texas law) and, as further alleged below, he and the other Defendants mounted a months-long cover up to hide his identity.

After the accident, Ramos was taken to the emergency room of Defendant Doctors Hospital by a family member. He was diagnosed with a concussion, multiple cuts, scrapes, and bruises. The hospital staff x-rayed him and gave him pain medication. After these initial measures, a nurse employed by Doctors Hospital took Ramos to a hospital room. The nurse immediately left the room, and in the process allowed four police officers to enter, including Defendant Sergeant Robert A. Garcia ("Garcia"). Thereafter, the officers allegedly unlawfully arrested Ramos and interrogated him, and despite his repeated pleas, they would not allow him to call his lawyer, Plaintiff Marcel Notzon, III ("Notzon"). The nurse, according to the Complaint, allowed the mistreatment and interrogation of Ramos, and no other Doctors Hospital employee intervened to protect Ramos. The Plaintiffs allege that Doctors Hospital's actions were conducted jointly with the state actors.

Ramos's thirteen-year-old brother-in-law, Luis Felipe Gonzalez ("Plaintiff Gonzalez"),[2] had accompanied Ramos to the hospital and was waiting there during Ramos's treatment. Plaintiffs claim the City of Laredo Police Officers placed him on the ground, handcuffed him, and arrested him at gunpoint, all without probable cause. Plaintiff Gonzalez allegedly suffered both short- and long-term injuries as a result of being arrested, including bruises, scratches, chronic back pain, and night terrors. At least some of the police officers involved were moonlighting as security agents for the Doctors Hospital at the time of the events involved herein.

---

[2] The Court will use "Plaintiff Gonzalez" and "Defendant Gonzalez" to differentiate between Plaintiff Luis Felipe Gonzalez and Defendant Ricardo Gonzalez throughout this order.

Meanwhile, Marlene Gonzalez, Plaintiff Gonzalez's mother, called Notzon to ask if he would go to the hospital "to protect their rights." By the time Notzon arrived on the scene, Plaintiff Gonzalez and his father, who is not a Plaintiff, were under arrest. Notzon asked one of the officers moonlighting for Doctors Hospital to tell him what the legal justifications for the arrests were. The officer told Notzon to ask Sergeant Garcia. Notzon approached Garcia and saw that Garcia was waiting to talk to Notzon's client, Ramos. Sergeant Garcia would not allow Notzon to speak to his client.

Doctors Hospital personnel told the police officers at the scene that Notzon was not allowed in the emergency room and asked the officers to have Notzon removed. A Laredo Police Officer, serving as a security guard for Doctors Hospital, demanded that Notzon leave the hospital or they would press criminal charges against him. The Doctors Hospital staff then insisted that police officers arrest Notzon for criminal trespass, despite the fact that he was there at the request of his client. After Notzon asked what the officers were doing to investigate who caused the motorcycle collision, Garcia placed him under arrest. Notzon was eventually charged with criminal trespass. The officers then told Ramos that his attorney had been arrested and that he (Ramos) had to answer their questions without an attorney.

According to the Plaintiffs, following their ordeal at the Doctors Hospital, the Laredo Police Department began an extend period of stonewalling Plaintiffs' attempts to uncover the truth surrounding the motorcycle collision. The Police Department refused to allow Plaintiffs to attend an inspection of the police motorcycles and refused to voluntarily release any documentation regarding the motorcycles. Defendant Ricardo Gonzalez ("Defendant Gonzalez") assisted in this campaign by refusing to produce photos of the motorcycle and hiding the photos from the investigating officer. Defendant Gonzalez also instructed investigating officers not to

interview Guerra or any other Laredo Police Officer in connection with Ramos's claim. These efforts were allegedly intended to aid Guerra in the cover up; their purpose was to intimidate Ramos and Notzon to prevent them from lodging criminal and civil claims against Guerra.

Despite these efforts, Plaintiffs' counsel and an investigator happened to locate a private citizen's surveillance video that allowed Plaintiffs to confirm the presence of a police motorcycle in the area at the time of the collision. Plaintiffs also used a Texas Open Records request to uncover photos of a motorcycle with revealing scratches consistent with Ramos's claims.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, the court "must accept as true all well pleaded facts in the complaint, and the complaint is to be liberally construed in favor of the plaintiff." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). A court should not dismiss a complaint for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* To survive a motion to dismiss, a claim must be "plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. Analysis

### A. 42 U.S.C. § 1985(2) and (3) Claims

Plaintiffs allege all Defendants violated 42 U.S.C. § 1985(2) and (3) by conspiring to falsely accuse and arrest Plaintiffs without probable cause. Defendants move to dismiss the

claims because Section 1985 requires that the conspiracy be motivated by racial or an otherwise class-based animus, neither of which are adequately pled in the Complaint. [Docs No. 56, at 12–13; 58, at 9–10]. The Court agrees with the Defendants and dismisses the claim.

Section 1985 creates a civil action for conspiracies that interfere with civil rights. Though the statute extends even to purely private conspiracies, it was not "intended to apply to all tortious, conspiratorial interferences with the rights of others." *Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971). To prevent Section 1985 from becoming a plenary basis of federal tort liability, the Supreme Court has "requir[ed], as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment," namely, race-based discrimination. *Id.* at 102. The Court left open the possibility, however, that "perhaps otherwise class-based" discrimination might also be within the scope of Section 1985. *Id.*

Plaintiffs do not allege that Defendants acted with racial animus. Instead, they contend they are "part of a class of individuals falsely accused and arrested without probable cause in violation of their constitutional rights." [Doc. No. 55, at 13]. Whatever the scope of class-based discrimination is, however, it does not include Plaintiffs' proposed class. In *Bray v. Alexandria Women's Health Clinic*, the Supreme Court rejected a similarly conceived class seeking Section 1985 relief. 506 U.S. 263 (1993). There, the Supreme Court considered a Section 1985 claim by various clinics and abortion rights advocates seeking injunctive relief against anti-abortion demonstrators. *Id.* at 266–67. The Court rejected the argument that the class of "women seeking abortion" could meet the class-based animus requirement of Section 1985. *Id.* at 269. Justice Scalia correctly noted that this class definition equated to a class of "those seeking to engage in the activity the defendant has interfered with." *Id.* This "definitional ploy," he wrote, would

undermine the very purpose of the animus requirement, which was to prevent Section 1985 from becoming a general font of federal tort law, because nearly any group of plaintiffs could describe themselves as that type of class. *Id.* In other words, the Court concluded, a Section 1985 class must be something more than "the group of victims of the tortious action." *Id.* (quoting *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 850 (1983) (Blackmun, J., dissenting)).

Plaintiffs' pleadings contain the same rejected strategy. They define themselves simply as the victims of certain constitutional violations. Allowing Plaintiffs to move forward with their claim on this basis would be to acknowledge that any group of tort victims could seek relief under Section 1985, effectively transforming the statute into the very kind of general federal tort that Congress and the Supreme Court have so wisely avoided. This Court cannot sanction such an interpretation and therefore dismisses all of Plaintiffs' Section 1985 claims.

### B. 42 U.S.C. § 1983 Against Individual Officer Defendants

Plaintiffs also allege Defendants violated 42 U.S.C. § 1983 in a variety of ways, implicating several constitutional rights. The two essential elements of a Section 1983 claim are: 1) a deprivation of a federal right, and 2) under color of state law. *Phillips v. Vandygriff*, 711 F.2d 1217, 1221 (5th Cir. 1983). The Individual Officer Defendants do not contest that they acted under color of state law for purposes of their motion to dismiss. The Court therefore considers the alleged constitutional claims to determine whether they have a legal basis.

<u>i. Fifth Amendment Right to Counsel (as incorporated through the Fourteenth Amendment)</u>

Plaintiffs allege that the arrest of Notzon deprived all Plaintiffs of their Fifth Amendment right to counsel, which has been incorporated against state actors through the Fourteenth Amendment. Defendants argue that this claim is improper as a matter of law because the Fifth Amendment only restricts federal action. The Court will not grant Defendants' motion to

6

dismiss on this ground because the Plaintiffs allege a Fourteenth Amendment violation (of an incorporated Fifth Amendment right), rather than a direct Fifth Amendment violation.

ii. Sixth Amendment Right to Counsel (as incorporated through the Fourteenth Amendment)

Plaintiffs also allege that Notzon's arrest deprived all Plaintiffs of their Sixth Amendment right to counsel. In their motion to dismiss, Defendants argue that Plaintiffs' Sixth Amendment right to counsel (as incorporated through the Fourteenth Amendment) was not violated because the right does not attach until the initiation of formal judicial proceedings, which had not occurred.

The Sixth Amendment right to counsel does not attach until formal adversary judicial proceedings have been initiated. *See United States v. Heinz*, 983 F.2d 609, 612 (5th Cir. 1993). Plaintiffs do not allege in their Complaint any kind of formal adversary judicial proceeding instituted against Ramos or Plaintiff Gonzalez, and therefore their Sixth Amendment right to counsel (as incorporated through the Fourteenth Amendment) had not attached and could not have been violated. Plaintiffs do allege, on the other hand, that Notzon was charged at some point with Criminal Trespass. [Doc. No. 55, at 6]. Since a formal charge does constitute the initiation of adversary judicial proceedings, see *Rothgery v. Gillespie Cty.*, 554 U.S. 191, 199 (2008), the Sixth Amendment right to counsel may have attached. The Court therefore grants Defendants' motion to dismiss this claim with respect to Ramos and Plaintiff Gonzalez, but denies the motion with respect to Notzon.[3]

---

[3] It is not clear to this Court factually how Notzon, a practicing lawyer, was deprived of counsel, but that will no doubt be the subject of later proceedings and motions.

iii. Fifth Amendment Right Against Self-Incrimination (as incorporated through the Fourteenth Amendment)

Plaintiffs further allege that arresting Notzon violated each Plaintiff's Fifth Amendment right against self-incrimination. The Supreme Court has held that "it is not until [a compelled statement's] use in a criminal case that a violation of the Self-Incrimination Clause occurs." *Chavez v. Martinez*, 538 U.S. 760, 767 (2003). Plaintiffs do not allege that the police extracted a statement from any of them, nor that any such statement was ever used against them in a criminal case. As such, they have not pleaded violations of the Self-Incrimination Clause and cannot sustain a Section 1983 claim on this basis. These claims are dismissed.

iv. Fifth Amendment Right to Due Process (as incorporated through the Fourteenth Amendment)

Separate from the Fifth Amendment's Self-Incrimination Clause, the Plaintiffs allege that "[a]rresting Ramos' lawyer, Marcel C. Notzon, on a pretext of which he [i]s innocent and which was later dismissed deprived all Plaintiffs of" their due process rights. [Doc. No. 55, at 9]. Defendants construe this language as a false arrest claim and argue that the claim should be dismissed because unlawful arrest claims are actionable only under the Fourth, rather than the Fourteenth, Amendment. [Doc. No. 57, at 11]. Meanwhile, Plaintiffs in their response make a different argument than the one suggested by their Complaint. Instead of arguing that *Notzon's arrest* deprived Plaintiffs of their due process rights, they claim that the *interrogations* and *cover-up activities* conducted by state actors "that are so brutal and so offensive to human dignity that they shock the conscience violate the Due Process Clause." [Doc. No. 59, at 5] (internal quotations omitted). Despite the failure to specifically tie the interrogations and cover-up activities to the due process allegation in the causes-of-action section of the Complaint, the Court, at this stage, considers those facts because they are properly and specifically pleaded. *Cf.*

*Rathborne v. Rathborne*, 683 F.2d 914, 917 n.8 (5th Cir. 1982) (considering improperly categorized claim because a plaintiff "must merely allege facts upon which relief can be granted" to survive a 12(b)(6) motion (citing *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594 (5th Cir. 1981)).

With regard to Notzon, he cannot sustain a substantive due process claim on the facts alleged. As Defendants correctly note, a false arrest claim is not actionable under the rubric of due process. *Cf. Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'"); *see Bustillos v. El Paso Cty. Hosp. Dist.*, 891 F.3d 214, 219–20 ("[Plaintiff's] substantive due process claims rest on the same underlying acts that constituted the alleged unlawful search and seizure. Because the Fourth Amendment 'fully embraces' these allegations, the district court did not err in dismissing the substantive due process claims."). Likewise, Notzon's theory of relief cannot rely on being interrogated because the Complaint does not allege that Notzon was interrogated. Finally, the Court fails to see (and the Plaintiffs' filings fail to illuminate) how an alleged cover up of the motorcycle hit and run deprived Notzon of any life, liberty, or property, as required for a due process claim. *See Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995) ("In a section 1983 cause of action asserting a due process violation, a plaintiff must first identify a life, liberty, or property interest protected by the Fourteenth Amendment and then identify a state action that resulted in a deprivation of that interest.").

The same is true for Plaintiff Gonzalez—by the facts of the Complaint, he was not interrogated, and it is also unclear how the alleged cover up (as opposed to the arrest, which

might be actionable under the Fourth Amendment) deprived him of his life, liberty, or property. Only Ramos, who according to the Complaint was interrogated and may have been denied a property or liberty interest by the alleged cover up, has a plausible substantive due process claim. *See Chavez*, 538 U.S. at 774 (recognizing that precedent "left open the possibility" that unauthorized, egregious police misconduct could violate the Due Process Clause). Accordingly, the Court dismisses Notzon's and Plaintiff Gonzalez's Section 1983 substantive due process claims but allows Ramos's claim at this stage.

v. Seventh Amendment Right to Civil Trial (as incorporated through the Fourteenth Amendment)

Plaintiffs allege that the arrest of Notzon deprived all Plaintiffs of their Seventh Amendment right to civil trial. Though Defendants do not specifically move to dismiss this variant of Plaintiffs' Section 1983 claims, the Court dismisses it without prejudice because the Seventh Amendment right to a civil jury trial has not been incorporated against the States through the Fourteenth Amendment. *See Walker v. Sauvinet*, 92 U.S. 90 (1875); *Melancon v. McKeithen*, 345 F. Supp. 1025, 1035 (E.D. La. 1972) (discussing the history of the Seventh Amendment not being incorporated through the Fourteenth Amendment).

vi. Eighth Amendment Right to Be Free from Cruel and Unusual Punishment (as incorporated through the Fourteenth Amendment)

Ramos alleges that interrogating him in his concussed and injured state subjected him to cruel and unusual punishment. "Punishment," in the Eighth Amendment sense, requires a formal adjudication of guilt. *See City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 244 (1983). Since Ramos had not been convicted of any crime or otherwise ajudged guilty in any

way, the Eighth Amendment has no application. The Court dismisses Ramos's Section 1983 claim with respect to his Eighth Amendment rights.

vii. Fourth Amendment (as incorporated through the Fourteenth Amendment)

Plaintiffs further allege that their Fourth Amendment rights were violated when they were allegedly arrested by Laredo police officers.[4] [Doc. No. 55, at 9–10]. Defendants argue that Plaintiffs' allegations are insufficient to establish a false arrest claim because Plaintiffs have not alleged a factual basis demonstrating that they were arrested without probable cause. Plaintiffs argue that their allegations suggesting a police cover up are facts that support the lack of probable cause.

To survive a motion to dismiss on a false arrest claim, the plaintiff must allege facts that show the defendants lacked probable cause to arrest him. *See Childers v. Iglesias*, 848 F.3d 412, 414 (5th Cir. 2017). Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id.* (quoting *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655–56 (5th Cir. 2004)). The Complaint alleges the Laredo police engaged in a conspiracy to cover up Gustavo Guerra's alleged hit and run of Ramos. If that is true, the alleged arrests of Plaintiffs may have taken place without probable cause. That is all Plaintiffs are required to show to survive a motion to dismiss. Accepting Plaintiffs' allegations as true for purposes of this motion, the Court finds that the Plaintiffs have alleged facts supporting a lack of probable cause. The motion to dismiss is denied as to these claims.

---

[4] Ramos also alleges that the police officers' interrogation of him violated his Fourth Amendment rights. [Doc. No. 55, at 9].

*C. 42 U.S.C. § 1983 Against the City of Laredo*

Plaintiffs also bring Section 1983 claims for the same alleged constitutional violations against the City of Laredo. In its motion to dismiss, the City argues that the only theory of liability against it is based on respondeat superior, which is not permitted in Section 1983 suits against municipalities. Plaintiffs claim that they properly pleaded a municipal liability claim based on the custom or practice of covering up police misconduct, which was the moving force behind the alleged false arrest of the Plaintiffs.

As Defendants note, a municipality cannot be liable under Section 1983 for the acts of its agents under a theory of respondeat superior. *See Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010). Instead, "[m]unicipal liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation." *Id.* The elements of municipal liability under Section 1983 are: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325 (5th Cir. 2002).

Here, Plaintiffs allege that the individual officers named in this suit falsely arrested each of them pursuant to a longstanding Laredo Police Department custom or practice of covering up illegal police conduct, with deliberate indifference toward Plaintiffs' rights. The Court, reading the Complaint as a whole, finds that Plaintiffs have pleaded facts sufficient to make a claim for municipal liability.

*D. Qualified Immunity*

The Individual Officer Defendants also move to dismiss the Plaintiffs' claims on the basis of qualified immunity. "Qualified immunity shields government officials performing

discretionary functions from civil liability for claims under federal law insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Randle v. Lockwood*, 666 Fed. App'x 333, 335 (5th Cir. 2016) (quoting *Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir. 2004)) (internal quotations omitted). The burden is on the plaintiff to demonstrate the inapplicability of the defense. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

Plaintiffs argue that the Individual Officers are not entitled to qualified immunity because "no reasonable officer would have acted as the officers in this case acted." [Doc. No. 59, at 9]; *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986) ("[Q]ualified immunity . . . provides ample protection to all but the plainly incompetent or *those who knowingly violate the law*."). Plaintiffs allege that the Individual Officer Defendants willfully took part in a conspiracy to violate the law and cover up Defendant Guerra's hit and run of Plaintiff Ramos. The Court, accepting these allegations as true at the motion to dismiss stage, finds that the Individual Officer Defendants cannot be entitled to immunity based on good faith. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (describing qualified immunity as "good faith" immunity). The Court denies the Individual Officer Defendants' Motion to Dismiss based on qualified immunity without prejudice, but it will consider the merits of the defense on a properly submitted motion for summary judgment.

### E. 42 U.S.C. § 1983 Against Doctors Hospital

Plaintiffs allege that Doctors Hospital is liable under Section 1983 for violations of several of Plaintiffs' constitutional rights.[5] It has moved to dismiss these claims. The crux of

---

[5] Specifically: "[V]iolation of the constitutional protection from unreasonable arrest or 'seizure'; the constitutional protection from the use of excessive force during an arrest; the constitutional rights to counsel when under interrogation and detention; [t]he Fourth Amendment right to be protected from an unreasonable arrest." [Doc. No. 55, at 11].

this issue is whether Doctors Hospital's alleged acts were taken under color of law as required by Section 1983.

Private parties generally do not act under color of law as required for liability under Section 1983. *See Cornish v. Correctional Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) ("[M]ere private conduct, no matter how discriminatory or wrongful, is excluded from § 1983's reach." (brackets and internal quotations omitted)). Private conduct may be considered to be under color of law, however, where the private actor "is a willful participant in joint activity with the State or its agents." *See United States v. Price*, 383 U.S. 787, 794 (1966); *Phillips*, 711 F.2d at 1225 ("Private parties, however, can be liable under section 1983 if they have conspired with a state official. . . . To establish a conspiracy . . . 'it is enough that a private party is a willful participant in joint activity with the State or its agents.'" (quoting *Price*, 383 U.S. at 794)). Plaintiffs advance two theories to explain how the Hospital's actions were taken under color of state law. The first involves the Hospital's urging Notzon's allegedly false arrest and the second concerns providing a "convenient forum" for police interrogation. Only the second plausibly states a Section 1983 claim.

Plaintiffs' first argument involves the Hospital's role in Notzon's arrest. They allege that:

- the Hospital ordered the exclusion of Notzon from visiting his clients while they were being accosted and detained by police officers,

- Hospital personnel told police officers at the scene that Notzon was not allowed in the emergency room,

- Hospital personnel requested that the officers arrest Notzon for criminal trespass,

- the Hospital participated in the conspiracy by contributing information to a false police report that hid and denied the conspiracy, and

- the Hospital "could have acted with state authority through its off-duty police officer security guard." [Doc. No. 58, at 4–6, 8].

Even assuming the truth of these allegations, as this Court must on a motion to dismiss, they cannot support the conclusion that the Hospital acted under color of law. Doctors Hospital directs the Court to a line of cases that consider the "under color of law" requirement in cases where a private entity contributes to the allegedly false arrest of a shoplifter. A recent case nicely summarizes the law:

> A private party does not act under color of state law when she merely elicits but does not join in an exercise of official state authority. For this reason, evidence that a private citizen reported criminal activity or signed a criminal complaint does not suffice to show state action on the part of the complainant in a false arrest case. The plaintiff must further show that the police in effecting the arrest acted *in accordance with a "preconceived plan"* to arrest a person merely because he was designated for arrest by the private party, without independent investigation.[6]

The preconceived plan requirement has bite. The Circuit has described that type of scheme as "the vice" animating this line of case law, and its absence is "dispositive" of a Section 1983 false arrest claim against a private actor. *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 749 (5th Cir. 2001) (internal quotation marks omitted); *Bartholomew v. Lee*, 889 F.2d 62, 63 (5th Cir. 1989). Plaintiffs do not allege that any of the alleged false arrests resulted from a preconceived plan, and they do not allege that the arrest was solely a result of Doctors Hospital's designation of any of the Plaintiffs for arrest, without independent investigation by the officers. Tellingly, they do not even respond to the argument as laid out in the Hospital's motion to dismiss. These

---

[6] *Moody v. Farrell*, 868 F.3d 348, 353 (5th Cir. 2017) (emphasis added; internal citations, quotations, and brackets omitted).

shortcomings help convince the Court that Plaintiffs have not alleged a plausible claim against Doctors Hospital under this urging-arrest theory.[7]

Plaintiffs also suggest a more promising theory, however. They allege that Doctors Hospital was a willful participant to an unconstitutional police cover-up by "providing a convenient forum for police to conduct interrogations without the presence of a patient's lawyer after one had been requested." [Doc. No. 55, at 6]. They further allege that Doctors Hospital selectively applied their visitation-hours policy to allow police officers unfettered access to hospital patients in a weakened and vulnerable state, which prompted the violations of each Plaintiff's constitutional rights. [*Id.* at 11]. Unlike the urging-arrest theory, the Court has not seen or otherwise been directed to a case that would require a preexisting plan or arrangement for liability under Section 1983 in this context. Based on Plaintiffs' allegations that Doctors Hospital was a "willful participant in joint activity with the State or its agents," the Court denies the motion to dismiss on this theory.

---

[7] Plaintiffs make two allegations worth commenting on further. The first is that they allege in their complaint that "[t]he actions of the police officer moonlighting as a security guard for Doctor's Hospital carry the authority of law since he retains [t]he ability to arrest and interrogate by virtue of his status as a police officer for the Laredo Police Department." [Doc. No. 55, at 6]. The Fifth Circuit has considered a case where an off-duty police officer served as a security guard and held that the same requirements applied to determine whether the guard's conduct was taken "under color of law." *Morris*, 277, F.3d at 750. Therefore, regardless of the fact that a Laredo Police Officer was moonlighting as a security guard, Plaintiffs' theory still must fail.

The second relates to the Plaintiffs' allegations that the Hospital participated in the conspiracy by contributing information to a false police report that hid and denied the conspiracy. Without more, contributing information to a police report does not make the informing party a state actor for Section 1983 purposes. *See Hernandez v. Schwegmann Bros. Giant Supermarkets, Inc.*, 673 F.2d 771, 772 (5th Cir. 1982). Plaintiffs would have to allege an "abdication of state authority," by which the police would "arrest any person merely because he was designated for arrest" by the Hospital, with no independent investigation on the part of the officer. *Id.* Plaintiffs' allegation does not rise to that level; they merely claim that the Hospital "contribut[ed] information" to a false police report—an allegation that does not insinuate an abdication of state authority or the total lack of independent investigation on the part of the arresting officer(s). Plaintiffs do not even allege the contributed information was false. As such, the police report allegation does not save Plaintiffs' urging-arrest theory of state action.

*F. False Imprisonment*

The Plaintiffs also bring a claim of false imprisonment against the Hospital, alleging that the off-duty police officers moonlighting as hospital security falsely imprisoned Notzon, Gonzales, and Ramos. They also claim that the City of Laredo and the Individual Officer Defendants are liable for false imprisonment by taking part in a civil conspiracy. The Defendants move to dismiss this claim, arguing that the Plaintiffs have failed to plead sufficient facts to state a cause of action as to any of the elements of false imprisonment.

In Texas, the essential elements of false imprisonment are: 1) willful detention; 2) without consent; and 3) without authority of law. *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002); *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985). False imprisonment has also been defined as the act of one person preventing another from going in any direction the latter deems proper to go, or of compelling a person to go to some place other than where that person desires to go. *S.H. Kress & Co. v. De Mont*, 224 S.W. 520 (Tex. Civ. App.—Galveston 1920).

A master or principal is liable for false imprisonment resulting from the acts of its agents or employees that are within the scope of employment. *Hendricks v. Bauer*, 709 S.W.2d 774, 775 (Tex. App.—Beaumont 1986, writ ref'd n.r.e.). To determine whether a private employer is vicariously liable for the actions of an off-duty police officer, courts consider in what capacity the officer was acting when he committed the complained-of acts. *Cox v. City of Fort Worth*, 762 F. Supp. 2d 926, 939 (N.D. Tex. 2010) (citing *Mansfield v. C.F. Bent Tree Apartment Ltd.*, 37 S.W.3d 145, 150 (Tex. App.—Austin 2001, no pet.) (citations omitted) and *Cherqui v. Westheimer St. Festival Corp.*, 116 S.W.3d 337, 344 (Tex. App.—Houston [14th Dist.] 2003, no

pet.)). Texas courts have formulated the following general test for answering the question of an officer's status:

> If the officer is performing a public duty, such as the enforcement of general laws, the officer's private employer incurs no vicarious responsibility for that officer's acts, even though the employer may have directed the activities. If the officer was engaged in protecting the employer's property, ejecting trespassers, or enforcing rules and regulations promulgated by the employer, however, the trier of fact decides whether the officer was acting as a public officer or as a servant of the employer.

*Id.* (citing *Mansfield*, 37 S.W.3d at 150).

As to Notzon, the Plaintiffs have sufficiently pleaded facts that, if true, could satisfy the three elements of the tort. They allege that an officer working as a security guard for the Hospital prevented Notzon from meeting with Ramos, his client, and eventually had him arrested, while other officers were interrogating Ramos about the accident. The Plaintiffs contend that, in keeping Notzon away from Ramos, the officers "neglected to apply the expressly adopted official policy regarding when visitation hours are allowed and instead applied the widespread or longstanding practice or custom of allowing police officers carte blanche access to their patients." [Doc. No. 55, at 11]. This fact, if true, could show that the officers were ejecting trespassers at the Hospital's behest, or that they were acting for the benefit of the Hospital (or vice-versa), and were not performing a public duty.

Plaintiffs also allege that Plaintiff Gonzalez was placed on the ground, handcuffed, and arrested at gunpoint by officers working as security guards for the Hospital. Taken in the light most favorable to the Plaintiffs, these allegations support the conclusion that both Notzon and Plaintiff Gonzalez were: 1) detained or restrained; 2) without their consent; and 3) without the authority of law.

18

The Plaintiffs have failed, however, to state a claim of false imprisonment (as opposed to false arrest) as to Ramos. They have failed to allege Ramos was ever detained against his will by any act of Doctors Hospital personnel, and their claim fails to satisfy the "willful detention" element of the cause of action. According to the Plaintiffs' assertions of fact, Ramos voluntarily checked himself into the hospital, was checked into a room, and received treatment for his injuries. Nowhere in the Complaint do Plaintiffs assert that Ramos attempted to leave, asked to leave, or even wanted to leave and was prevented by the hospital from doing so. Further, they do not plead that Doctors Hospital prevented Ramos's bodily movement in any way. Without alleging facts of this kind, the Plaintiffs have failed to plead the "willful detention" element. Their claim of false imprisonment against the Defendants as to Ramos must be dismissed.

Evidence may yet be developed that negates Plaintiffs' false imprisonment claims. In *Cox v. City of Fort Worth*, when a hospital was sued for the actions of an off-duty police officer working at the hospital, the court granted the hospital's motion for summary judgment because it had provided summary judgment evidence that the officer was enforcing general laws at the time of the allegedly wrongful conduct, and was not acting as a private servant. 762 F. Supp. 2d 926, 939 (N.D. Tex. 2010) (applying Texas law). This evidence included testimony from the officer "that he [did] not enforce hospital rules or policies." *Id.*

In this case, a record has not yet been developed, and no evidence has been provided to show in what capacity the officers acted. At some time in the future, after development of the record, it may be that the Defendants are able to provide summary judgment evidence to show that the police acted as public officers, and not as private servants. That is not yet the case. To this point, the Court must determine only whether the Plaintiffs have pleaded facts sufficient to state cause of action. They have.

## IV. Conclusion

As explained above, the Court partially grants and partially denies each Motion to Dismiss [Docs. No. 56 & 57]. Specifically:

As to the claims against the City of Laredo and the Individual Officer Defendants, the Court grants the Motion to Dismiss [Doc. No. 57] with respect to the 42 U.S.C. § 1985 claims as to all Plaintiffs and the 42 U.S.C. § 1983 claims for the Sixth Amendment right to counsel as to Plaintiffs Ramos and Gonzalez, the Fifth Amendment right against self-incrimination as to all Plaintiffs, the Fifth Amendment right to due process as to Plaintiffs Notzon and Gonzalez, the Seventh Amendment right to civil trial as to all Plaintiffs, and the Eighth Amendment right to be free from cruel and unusual punishment as to all Plaintiffs. As to all other claims against the City of Laredo and the Individual Officer Defendants, the Court denies the Motion to Dismiss.

As to the claims against Doctors Hospital, the Court grants the Motion to Dismiss [Doc. No. 56] with respect to the 42 U.S.C. § 1985 claims as to all Plaintiffs; any 42 U.S.C. § 1983 claim based on the urging-arrest theory described in subpart III(E) as to all Plaintiffs; and the false imprisonment claim as to Plaintiff Ramos. As to all other claims against Doctors Hospital, the Court denies the Motion to Dismiss.

Signed this 16th day of July, 2018.

                                                   Andrew S. Hanen
                                                   United States District Court Judge